UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CR-162-1-BR
5:12-CV-32-BR

MICHAEL DOUGHTY WILLIAMS, )
 )
    Petitioner, )
 )
    v. )    O R D E R
 )
UNITED STATES OF AMERICA, )
 )
    Respondent. )

This matter is before the court for initial review of this 28 U.S.C. § 2255 petition pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings. Under this Rule, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." R. Gov. § 2255 Pro. 4(b).

On 15 January 2010, a jury found petitioner guilty of conspiracy to possess with intent to distribute 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and 846. On 6 July 2010, petitioner was sentenced to a term of 300 months imprisonment. Petitioner appealed his conviction and sentence. The Fourth Circuit Court of Appeals affirmed. United States v. Williams, 439 F. App'x 254 (4th Cir. 2011) (unpublished). Petitioner subsequently filed a petition for writ of certiorari, which the Court denied. Williams v. United States, No. 11-6821 (U.S. Nov. 7, 2011). On 23 January 2012, he timely filed the instant petition.

Petitioner asserts seven claims, all based on ineffective assistance of counsel. The applicable legal standard for an ineffective assistance claim is well established. Under the

principles of Strickland v. Washington, 466 U.S. 668 (1984),

> a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Under the second prong of *Strickland* 's test, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." For counsel's trial performance to be deficient, he must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's representation fell below an objective standard of reasonableness." To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Under *Strickland,* a reasonable probability is a "probability sufficient to undermine confidence in the outcome."

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (citations omitted), cert. denied, 122 S. Ct. 2311 (2002).

First, petitioner contends his trial counsel was deficient because counsel failed to object to the court's lack of specific findings regarding petitioner's role in the offense. (Pet., DE # 128, at 4; Mem., DE. # 128-1, at 7.) Petitioner's argument is based on the three-level increase to his offense level as a result of his being deemed a manager or supervisor under U.S.S.G. § 3B1.1(b). This enhancement applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1(b) (2009). Trial counsel lodged an objection to the applicability of the enhancement, and at the sentencing hearing, the court heard testimony relating to this enhancement, the drug quantity attributable to petitioner, and his possession of a firearm in connection with drug activity. (See 7/6/10 Tr., DE # 116, at 5-49.) At the conclusion of the testimony, the court overruled all the objections; specifically noted objection "3" (that being, the

2

objection trial counsel raised to the role-in-the-offense enhancement) and clear evidence of petitioner's being a manager or supervisor; and adopted the factual findings in the presentence report. (Id. at 49, 50.)

Petitioner argues that the court should have specifically applied the factors in U.S.S.G. § 3B1.1 n.3 to its factual findings to determine whether the role-in-the-offense enhancement was warranted. (Mem., DE # 128-1, at 8.) Petitioner's argument is misplaced for several reasons. First, the Application Note to which petitioner refers, that is, Note 3, does not identify any factors the court should apply; rather, it provides, in part, that "[i]In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." U.S.S.G. § 3B1.1 n.3 (2009). Petitioner may have intended to refer to Application Note 4, which provides, in part,

> [i]n distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Id. n.4. These factors apply to the court's determination of whether a defendant is an organizer or leader. United States v. Thorson, 633 F.3d 312, 318 (4th Cir. 2011). There being no suggestion that petitioner was an organizer or leader, the court was not obligated to consider these factors. Furthermore, even if the court was required to consider these factors, the court has no obligation to set forth specifically its findings as to each factor. It is sufficient if the court's evaluation of the defendant's role in the offense is evident from the record. See United States v.

3

Shippy, 379 F. App'x 281, 282-83 (4th Cir. 2010) (unpublished) (distinguishing United States v. Chambers, 985 F.2d 1263 (4th Cir.1993), and stating that "we can discern from the district court's comments and discussions with those present at [the defendant's] sentencing, as well as its explicit adoption of the presentence investigation report's detailed factual findings and calculations, that the district court evaluated [the defendant's] role in the bank fraud scheme in light of the USSG § 3B1.1 factors").

In this case, the court assessed petitioner's role in the offense based on the testimony at trial and the testimony from law enforcement officials at sentencing. Such assessment is evident from the record. Additional findings were not necessary. As such, there was no reason for counsel to lodge any further objection to the role-in-the-offense enhancement. Accordingly, counsel was not ineffective on this basis, and petitioner's first claim will be dismissed.

For the same reason, petitioner's second claim will be dismissed. Petitioner claims appellate counsel was ineffective for failing to raise on appeal the lack of the court's findings on the role-in-the-offense enhancement. (Pet., DE # 128, at 5; Mem., DE # 128-1, at 11.) If there was no reason for trial counsel to object on this ground, then there was no reason for appellate counsel to raise the issue on appeal, and appellate counsel is not ineffective. See Brooks v. United States, No. 3:02–0092, 2011 WL 1043550, *12 (S.D. W. Va. Feb. 15, 2011) (proposed findings and recommendation) ("When no merit is found in a claim of ineffective assistance of trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal." (citing United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995)), adopted, 2011 WL 1043503 (S.D. W. Va. Mar. 18, 2011).

Petitioner next claims trial counsel was ineffective for failing to request an informant

4

instruction, specifically:

> "The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. THe [sic] jury must determine whether the informer's testimony has been affected by interests or by prejudice against a defendant."

(Mem., DE # 128-1, at 14.) Counsel did not request this specific instruction. However, separate and apart from its general instruction on witness credibility, the court instructed the jury as follows:

> In this case, the government called as some of its witnesses alleged accomplices with whom the government has entered into plea agreements providing for the dismissal of some charges and a lesser sentence than they would otherwise be exposed to for the offenses to which they pled guilty. Such plea bargaining, as it's called, has been approved as lawful and proper, and is expressly provided for in the rules of the court.
> An alleged accomplice, including one who has entered into a plea agreement with the government, does not thereby become incompetent as a witness. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty.
> The testimony of an alleged accomplice, the testimony of one who is shown to have used addictive drugs during the period of time about which he or she testified, and the testimony of one who provides evidence against a defendant for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of an ordinary witness. You, the jury, must decide whether the witness' testimony has been affected by any of those circumstances, or by an interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received as a result of being immunized from prosecution. If you determine that the testimony of such a witness was affected by any one or more of those factors, you should keep in mind that such testimony is always to be received with caution and weighed with great care.

5

(1/15/10 Tr., DE # 119-3, at 558-59.)

This instruction adequately brings the jury's attention to the testimony of what petitioner characterizes as "police informants" and distinguishes this case from United States v. Luck, 611 F.3d 183 (4th Cir. 2010), on which petitioner relies. The fact that the court did not use the word "informant" in its instructions is of no moment. The tenor of the instruction is that the jury should receive and examine the referenced testimony with great care. Petitioner suffered no prejudice as a result of counsel's failure to request an informant instruction, and therefore, his third claim will be dismissed.

With his fourth claim, petitioner contends that appellate counsel was ineffective for failing to raise on appeal the court's purported procedural error at sentencing of failing to address petitioner's argument regarding the sentencing guideline disparity between crack and powder cocaine. (Pet., DE # 128, at 8; Mem., DE # 128-1, at 18.) Under the advisory sentencing guidelines, petitioner's imprisonment range was life. (7/6/10 Tr., DE # 116, at 50.) At sentencing, counsel noted that this range is based on the crack/powder disparity. (Id. at 56.) Counsel suggested that using the powder equivalent to determine the base offense level and accounting for the weapon and role-in-the-offense enhancements, with a criminal history category of II, the guideline range would be "in the 262[-month] range." (Id. at 56-57.) Ultimately, the court varied downward from the guidelines and imposed a 300-month imprisonment term. The court did so based on several factors, although the crack/powder disparity was not one of them. (See id. at 65-66.) Even though the court did not mention that disparity, it is evident that by the court's imposition of a sentence below the guideline range, "the court did not consider itself bound to apply the crack/powder cocaine ratio dictated by the

6

Guidelines." See United States v. Garcia, 432 F. App'x 248, 253 (4th Cir. 2011) (unpublished) (holding sentence was procedurally and substantively reasonable where defendant claimed district court had failed to address "Kimbrough issue" and the court had sentenced defendant "in accord with the newly-enacted Fair Sentencing Act, rather than the then-applicable Guidelines range"), cert. denied, No. 11-6626 (U.S. Jan. 17, 2012). Therefore, even assuming counsel unreasonably failed to raise the crack/powder disparity issue on appeal, no reasonable probability exists that, but for counsel's failure to raise the issue on appeal, it would have been successful. See United States v. Daniels, No. CR 3:04-330-CMC, 2008 WL 906706, *3 (D.S.C. Apr. 1, 2008) ("If Defendant succeeds in such a showing [of objective unreasonableness], he then must establish a reasonable probability that, but for his appellate counsel's unreasonable failures, he would have prevailed on his appeal." (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)). In the absence of any prejudice, petitioner's fourth claim will be dismissed.

Petitioner's fifth claim alleges ineffective assistance related to trial counsel's failure to object to the government's use of evidence obtained from a 2003 search and to renew a motion to suppress, after the government had agreed not to use the evidence. (Pet., DE # 128, at 10; Mem., DE # 128-1, at 21.) By way of background, prior to trial, defense counsel filed a motion to suppress evidence related to two searches of vehicles petitioner was driving. One search occurred in 2003, and the other search occurred in 2007. During the 2003 search, a quantity of crack was discovered in the vehicle.

At the hearing on the motion to suppress, counsel for the government stated,

> Your Honor, . . . I would like to just briefly address the Court as to the 2003 search that is first addressed by Mr. Wilkinson's motion to avoid any possible issues with that evidence. The Government does not intend to offer that anything having to do with that search

7

> in its case in chief. Because of -- it's possible that the Government
> may, dependent on what evidence the defendant presents, want to
> do [sic] deal with it some time in the future for rebuttal purposes or
> cross-examination purposes and the Government would bring that
> to the Court's attention or alert the Court to that before wanting to
> get into any of that kind of evidence.

(12/7/09 Tr., DE # 115, at 4.) The court responded, "Well, as long as you don't touch it in any way at any time without having clear Court approval beforehand, that'll be fine." (Id.) At the conclusion of the hearing, the court stated, "Counsel, that will not be mentioned to -- in the presence of the jury without having first cleared it with the Court, any aspect of that, of the first search, in any way." (Id. at 19-20.) The government's counsel responded, "Understood, Your Honor." (Id. at 20.)

At trial, the government's counsel cross-examined petitioner about the search, and petitioner testified, as follows.

> Q. Now, you indicated -- excuse me -- when your grandmother
> testified, she said that you would never have anything to do with
> drugs, correct?
> A. Yes, sir.
> Q. And you said that several times during your testimony, correct?
> A. Yes, sir.
> Q. Well, did you tell her about a traffic stop you had in December of
> 2003?
> A. No, sir.
> Q. In Johnston County?
> A. No, sir.
> Q. And wasn't cocaine found in the car you were driving?
> A. I didn't see any cocaine. It was -- I was in a Jeep Cherokee. The
> officer said he found cocaine in the hatchback. He said he found like less
> than .1 of a gram, whatever that is.
> Q. So you didn't tell your grandmother you were driving a car where
> cocaine was found on the speaker of that car, correct?
> A. No, sir. The car wasn't mine and I wasn't aware there were drugs in
> there.
> Q. You didn't tell your grandmother about that, did you?
> A. No, sir, I didn't.

> Q. And as a result of that, did you take any -- did you have any diversion agreement as a result of that?
> A. Yes. That's the day that agents had threw my father into the car and they told him that we knew you would come get your son, and so they -- it's like they used me for bait.
> Q. They used you for bait?
> A. Yeah.
> Q. So you were driving a car with cocaine in it and you entered into a diversion agreement with the state to get those charges dismissed, correct?
> A. My father told me just to plead guilty, it wouldn't be a felony.
> Q. Sir, it's just a yes or no question. Is it correct that you entered into a diversion agreement?
> A. Yes, I did.
> Q. And you completed it?
> A. Yes, sir.
> Q. You took drug classes for that?
> A. Yes, sir.
> Q. Even though you never did anything around drugs?
> A. Yes, sir.
> Q. As part of that diversion agreement, you had to sign that agreement, correct?
> A. Yes, sir.
> Q. Part of that agreement says that you are in fact guilty of those charges, correct?
> A. Yes, they do.
> Q. So you signed a document that said you were in fact guilty of possessing that cocaine, correct?
> A. Yes, sir, I did.
> Q. You never had anything to do with drugs, correct?
> A. No, I haven't.
> Q. During that stop they found over $800 in cash on you, correct?
> A. Yes, sir.

(1/14-1/15/10 Tr., DE # 130, at 50-52.) The government's counsel did not seek prior approval of the court before this line of questioning about the 2003 search.

Even though petitioner's trial counsel did not object to the questioning, petitioner was not prejudiced by counsel's failure to do so. During petitioner's case-in-chief, petitioner's grandmother testified that she was never aware of petitioner being involved with drugs.

9

Petitioner himself testified that he had always stayed away from drugs. As such, petitioner opened the door to questioning about the 2003 search. Even if trial counsel had objected and renewed the motion to suppress, the court would have overruled the objection. Therefore, counsel was not ineffective on this ground.

Petitioner next claims trial counsel was ineffective in the handling of the motion to suppress insofar as it concerns the 2007 search. (Pet., DE # 128, at 12; Mem., DE # 128-1, at 25.) Specifically, petitioner contends that counsel should have elicited testimony from Officers Lewis and Morales and that counsel failed to present a cogent argument about the length and duration of the stop being excessive. (Mem., DE # 128-1, at 25.) Having reviewed the written motion to suppress as well as the transcript of the hearing on the motion, the court concludes that trial counsel's performance regarding the motion to suppress evidence related to the 2007 search was objectively reasonable. Petitioner's sixth claim for relief will be dismissed.

Finally, petitioner claims trial and appellate counsel were deficient in failing to request, and challenge effectively on appeal, respectively, that the jury should have been required to make a finding as to the quantity of crack attributable to petitioner. (Pet., DE # 128, at 14; Mem., DE # 128-1, at 30.) On appeal, one of the issues the Fourth Circuit Court of Appeals considered was whether "the jury's verdict was insufficient to trigger the enhanced penalty provisions of 21 U.S.C.A. § 841(b)(1)(A) . . . because the jury did not make an explicit finding as to the threshold drug quantity attributable to [petitioner]." Williams, 439 F. App'x at 257. The court found that there was no error. Id. Because the appellate court considered this issue, petitioner cannot raise it now as a basis for habeas relief. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (recognizing that a petitioner cannot "recast, under the guise

of collateral attack, questions fully considered by this court").

Because petitioner is not entitled to relief on any claim he asserts, the § 2255 petition is DISMISSED.

The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

This 6 February 2012.

_____
W. Earl Britt
Senior U.S. District Judge